UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------  X
                                                                       :
RALIK BONDS,                                                           :
                                                                       :
                    Plaintiff,                                         :        12-CV-1772 (ARR) (MDG)
                                                                       :
          -against-                                                    :        NOT FOR ELECTRONIC
                                                                       :        OR PRINT PUBLICATION
THE CITY OF NEW YORK, P.O. JUSTIN GRIECO,                              :
SERGEANT DAVID SALMON, AND P.O. JOHN DOES                              :        OPINION AND ORDER
1-9 OF THE 75TH PRECINCT,                                              :
                                                                       :
                    Defendants.                                        :
                                                                       :
---------------------------------------------------------------------  X


ROSS, United States District Judge:

          Plaintiff Ralik Bonds brings this action under 42 U.S.C. § 1983 and New York state law

against defendants City of New York, New York Police Department ("NYPD") Officer Justin

Grieco, NYPD Sergeant David Salmon, and NYPD Officers John Doe(s) 1-9 of the 75th

Precinct. Plaintiff's claims arise from his arrest on May 21, 2011 and his subsequent prosecution.

Now before the court is defendants' motion for summary judgment. For the reasons set forth

below, the court grants the motion in part, denies the motion in part, and reserves judgment in

part. The court denies defendants' summary judgment motion with respect to plaintiff's §1983

false arrest claim. The court grants summary judgment dismissing plaintiff's § 1983 malicious

prosecution claim and state law false arrest claims. The court orders further briefing regarding

plaintiff's state law malicious prosecution claim.

# BACKGROUND

## I.    Plaintiff's Arrest on May 21, 2011

It is undisputed that on May 21, 2011, defendant officers Salmon and Grieco observed plaintiff walking with a group on the corner of Hegeman Avenue and Elton Street in Brooklyn, New York. Defs.' Local Rule 56.1 Statement of Facts ("Defs. Facts"), Dkt. #39, ¶ 7. Plaintiff had a bicycle with him. Id. ¶ 9. Salmon and Grieco were in uniform in a marked police vehicle, and plaintiff saw the officers and their vehicle. Id. ¶¶ 5, 8. The officers stopped the group about a block away at the corner of Cleveland Street and Linden Boulevard, handcuffed plaintiff, and took him into custody. Id. ¶¶ 13-14. Aside from these undisputed facts, the parties offer differing accounts of the events that led up to plaintiff's arrest.

Grieco and Salmon testified that they had been patrolling the area that day when a passerby told them that a group of kids were shooting at each other at a nearby park. Dep. of David Salmon ("Salmon Dep."), Decl. of Rhiana Swartz ("Swartz Decl."), Dkt. #37, Ex. B, at 9-10; Dep. of Justin Grieco ("Grieco Dep."), Swartz Decl., Ex. C, at 19. Neither officer personally heard shots being fired. Salmon Dep. 11; Grieco Dep. 19. Grieco and Salmon went to the park but did not see anything there. Salmon Dep. 12; Grieco Dep. 21. They continued patrolling the area, with Grieco driving and Salmon in the passenger seat, when they saw plaintiff and his group at the corner of Hegeman Avenue and Elton Street. Salmon Dep. 10, 12; Grieco Dep. 12.

Both officers testified that, as the group went by, they observed a man with a bicycle drop an object onto the ground. Salmon Dep. 10; Grieco Dep. 18. Salmon said the motion of dropping the object was "[v]ery quick" and that the man "placed it down and got right back up in one motion." Id. at 14-15. Salmon could not see what object the person had dropped. Id. at 28. Grieco testified that the man "dipped down close enough to the ground and . . . placed [an item]

gently onto the ground" while holding the bicycle in his other hand. Id. at 49. Salmon testified

that he waited until the group had passed, then got out of the police car and went to the site

where he had seen the man drop the object. Salmon Dep. 15. He testified: "At the location where

I saw him place something down, I observed a slab of cement sitting lopsided clearly with

something underneath it, because it was lopsided. Underneath that I found a loaded firearm." Id.

at 11. According to Salmon, the firearm was visible underneath the cement, but he had to remove

the cement in order to pick up the firearm. Id. at 16. He said that no one else was in the area and

nothing else was at the site other than the cement and the firearm. Id. at 15, 28.

The officers testified that they drove until they caught up to the group that they had seen

earlier. Salmon Dep. 26; Grieco Dep. 17. Both officers got out of the car, stopped all the

individuals, and frisked them for weapons. Salmon Dep. 18; Grieco Dep. 23. Salmon testified

that he asked another police officer to go to the location where shots had been reported. Id. at 19.

The officer came back with an individual who said he had witnessed a shooting at the park. Id. at

20. The individual initially identified plaintiff as the shooter, then "recanted" and said "he wasn't

sure," and "kept going back and forth that he wasn't sure as to the identification of the shooter."

Id. at 20. The officers arrested plaintiff, whom they identified as the man they had seen drop the

object, and let the rest of the group go. Grieco Dep. at 22-23.

For his part, plaintiff testified that he has never possessed a gun, that he did not drop a

gun on the day in question, and that none of the friends who were with him dropped a gun. Test.

of Ralik Bonds, Swartz Decl., Ex. E, at 33. According to his account, he and a group of friends

had just finished playing basketball at a park and were walking together to one of his friend's

houses. Dep. of Ralik Bonds ("Pl. Dep."), Swartz Decl., Ex. D, at 38.[1] After his group passed the

---

[1] In his deposition, plaintiff testified that he was with a group of five friends. Pl. Dep. 37-38. In his later affidavit,
plaintiff says he was with four friends. Aff. of Ralik Bonds ("Pl. Aff."), Decl. of Chidi Eze ("Eze Decl."), Dkt. #46,

police car at the corner of Hegeman Avenue and Elton Street, they continued walking until the same police car pulled up to them. Id. at 38-40. Both officers got out, then Grieco approached plaintiff, moved him away from the others, and said he was going to do a "quick search." Id. at 40, 43-44. Plaintiff responded, "No problem." Id. at 45. Grieco conducted a patdown search of plaintiff, then about five or six other police cars pulled up to the scene. Id. at 45-46. Grieco told plaintiff that he was being placed under arrest because the officers had seen him drop a gun. Id. at 47. Plaintiff testified that he told Grieco, "[Y]ou didn't see me drop a gun," but Grieco did not respond. Id. at 48. The officers handcuffed plaintiff, put him in a police car, and transported him to the 75th Precinct. Id. at 49-50.

## II.     Events Following Plaintiff's Arrest

On the same day as plaintiff's arrest, officers at the 75th Precinct dusted the firearm that was recovered from the scene and did not find any fingerprints on it. Grieco Dep. 31. Grieco testified that plaintiff was not released because a lack of fingerprints "doesn't mean he didn't have it," and the police still wanted to conduct DNA testing to determine if a sample from the gun matched plaintiff's DNA. Id. at 32-33.

The next day, on May 22, 2011, Grieco signed a criminal complaint charging plaintiff with criminal possession of a weapon. Defs. Facts ¶ 15. The complaint states that on May 21, 2011, "deponent observed defendant drop a black object onto the sidewalk where defendant was walking. Deponent further states that deponent recovered a loaded .45 semi-automatic firearm from the above-mentioned sidewalk where deponent observed defendant drop it." Swartz Decl., Ex. F. Plaintiff was arraigned the same day. Defs. Facts ¶ 16. Plaintiff initially did not make bail

---

Ex. 1, ¶ 4. The officers' testimony is consistent with plaintiff's affidavit, since Salmon recalls seeing a group of four or five men, Salmon Dep. 10, and Grieco recalls seeing a group of five men, Grieco Dep. 12. In any event, the exact number of people in plaintiff's group is not material.

and was incarcerated at Riker's Island until June 27, 2011, when he made bail and was released from custody. Defs. Facts ¶¶ 16, 18.

On May 31, 2011, a grand jury indicted plaintiff on charges of criminal possession of a weapon in the second and fourth degrees, in violation of New York Penal Law § 255.03(3) and § 265.01(1). Swartz Decl., Ex. G. Grieco testified before the grand jury. Decl. of Chidi Eze ("Eze Decl."), Dkt. #46, Ex. 4. On November 14, 2011, the results of DNA testing showed that plaintiff's DNA did not match a sample from the firearm. Eze Decl., Ex. 5. All charges against plaintiff were dismissed on January 18, 2012. Defs. Facts ¶ 19; Swartz Decl., Ex. H.

Plaintiff filed a notice of claim with the city, dated January 23, 2012, asserting claims for false arrest, false imprisonment, and malicious prosecution. Swartz Decl., Ex. I. Plaintiff brought this action on April 11, 2012. In his second amended complaint filed on January 24, 2013, plaintiff asserts claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 and New York state law, and he also asserts a claim against the City of New York under the doctrine of respondeat superior. Compl., Dkt. #14. He seeks $2 million in compensatory damages and $2 million in punitive damages, along with attorney's fees and costs. Following discovery, defendants have moved for summary judgment on all of plaintiff's claims. Dkt. #36.

## DISCUSSION

### I.      Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## II.     Section 1983 False Arrest Claim

In order to succeed on a claim under 42 U.S.C. § 1983, plaintiff must show (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that

such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or the laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

Plaintiff's § 1983 false arrest claim asserts a deprivation of the Fourth Amendment right to be free of unreasonable seizures.  A § 1983 claim for false arrest is "substantially the same" as a claim for false arrest under New York state law. Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996). Plaintiff must prove that defendants intentionally confined plaintiff, that plaintiff was conscious of the confinement and did not consent to it, and that the confinement was not otherwise privileged. Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)). The existence of probable cause for the arrest renders the confinement privileged and constitutes a complete defense to a false arrest claim. Jocks, 316 F.3d at 135; Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir. 1999). Probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information . . . sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. Evaluating whether probable cause exists is an objective inquiry, and the arresting officer's state of mind is irrelevant. Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

On a motion for summary judgment, the court can determine probable cause as a matter of law if the relevant events and knowledge of the officers are not in dispute. Drummond v. Castro, 522 F. Supp. 2d 667, 673 (S.D.N.Y. 2007); Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998). Even if facts are disputed, a defendant may still be entitled to summary judgment on a § 1983 false arrest claim if the plaintiff's version of events establishes the existence of probable cause to arrest. Mistretta, 5 F. Supp. 2d at 133. However, "[w]here the

question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events," the issue of which account of the events to credit and whether the officer had probable cause is to be decided by the jury. Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997); see also Barksdale v. Colavita, 506 F. App'x 82, 85 (2d. Cir 2012); Zhao v. City of N.Y., 656 F. Supp. 2d 375, 387 (S.D.N.Y. 2009).

Defendants argue that the officers had probable cause to arrest plaintiff for criminal possession of a weapon because they were patrolling an area where there had been reports of gunshots, they observed plaintiff place an object on the ground, and then they recovered a loaded gun from that location. Defs. Mem. of Law in Supp. of Mot. for Summ. J. ("Defs. Mem."), Dkt. #38, at 6. I find, however, that the officers' testimony regarding what they saw does not establish as a matter of law that they had probable cause for the arrest. In Curry v. City of Syracuse, 316 F.3d 324, 327-28 (2d Cir. 2003), the officer testified that he saw the plaintiff pull something out of his sock and throw it away, then the officer recovered a plastic bag containing crack cocaine from the scene. The Second Circuit held that the plaintiff's testimony that he did not reach for his sock, throw anything away, or possess any controlled substances at the time of his arrest was sufficient to raise a genuine issue of material fact as to whether the plaintiff had in fact thrown away a bag of drugs. Id. at 336-37. Similarly, here plaintiff testified that he has never possessed a gun and did not drop a firearm on the day of his arrest. To be sure, as defendants argue, the issue is not whether plaintiff actually dropped a gun, but whether it was objectively reasonable for the officers to believe that plaintiff dropped a gun. A "totally innocent movement" could support a finding of probable cause if it was "enough for the officers to reasonably infer that plaintiff was trying to get rid of something upon seeing them." Defs. Mem. 6. Yet according to plaintiff's account, he was walking with his friends, saw the police officers in their car, and continued

walking until the officers stopped him. Nothing in his account suggests that plaintiff dropped any object or made a motion that looked like dropping an object.[2]

Drawing all reasonable inferences in favor of plaintiff, I find that the record reflects a genuine dispute as to the events that occurred prior to plaintiff's arrest. Resolving the conflict between plaintiff's account and the officers' account would require credibility determinations that a court cannot make at the summary judgment stage. Since plaintiff's version of events does not establish probable cause to arrest him for any offense, the court cannot grant summary judgment to defendants on his false arrest claim. See Brown v. City of N.Y., No. 08-CV-5095 (FB)(MDG), 2013 WL 1338785, at *3 (E.D.N.Y. Apr. 1, 2013) (denying summary judgment where "plaintiff denies doing the very things that would have created probable cause for his arrest"); Milfort v. Prevete, 922 F. Supp. 2d 398, 406 (E.D.N.Y. 2013) (finding genuine issue of material fact as to whether officer had probable cause to arrest plaintiff for disorderly conduct where, under plaintiff's account, he "did not create unreasonable noise, could not have been blocking the flow of pedestrian traffic, and was not causing a scene"); Douglas v. City of N.Y., 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (denying summary judgment where, under plaintiff's version of events, he was waiting in front of a dry cleaner when he was "arrested . . . on drug charges despite having engaged in no illegal activity").

Defendants argue in the alternative that the officers are entitled to qualified immunity. Defs. Mem. 13. The doctrine of qualified immunity shields government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional

---

[2] Defendants argue that plaintiff has failed to offer evidence negating the possibility that he made a movement "that could possibly have been perceived as dropping or placing down of an object." Defs. Reply Mem. of Law ("Defs. Reply"), Dkt. #40, at 7. It is true that in this case, unlike in Curry, plaintiff's testimony does not specifically deny that he dropped any object. However, plaintiff denied dropping a gun, and he cannot be expected to testify as to how the officers might have perceived his movements. Viewing the facts in the light most favorable to plaintiff, I find that plaintiff's account, in which he saw the police and continued walking, conflicts with the officers' account, in which plaintiff saw the police and dropped an object.

rights of which a reasonable person would have known." Gonzalez v. City of Schenectady, 728

F.3d 149, 155 (2d Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A police

officer is entitled to qualified immunity if "at least some reasonable officers in the defendant's

position 'could have believed that [the challenged conduct] was within the bounds of appropriate

police responses.'" Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013) (quoting

Saucier v. Katz, 533 U.S. 194, 208 (2001)) (alteration in original). Therefore, even if defendants

lacked probable cause for the arrest, they are entitled to qualified immunity if there was

"arguable probable cause at the time of arrest—that is, if officers of reasonable competence

could disagree on whether the probable cause test was met." Jenkins v. City of N.Y., 478 F.3d

76, 87 (2d Cir. 2007) (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d. Cir. 1995)) (internal

quotation marks omitted).

Defendants argue that even if the officers were mistaken in believing that plaintiff had

dropped an object, "their finding of a loaded gun where he had just been, minutes after receiving

reports of shots fired in the vicinity, gave them arguable probable cause to arrest plaintiff." Defs.

Mem. 14. As explained above, however, the circumstances surrounding plaintiff's arrest are

disputed. According to plaintiff's version of events, he was engaged in no suspicious or illegal

activity and was simply walking back from a basketball game with his friends when the officers

stopped him. If a juror chose to credit plaintiff's account, the officers had neither probable cause

nor arguable probable cause to arrest him. Therefore, defendants are not entitled to qualified

immunity at this stage. See McClellan v. Smith, 439 F.3d 137, 149 (2d Cir. 2006) ("[R]esolution

of genuine factual issues is inappropriate on motions for summary judgment based on qualified

immunity."); Curry, 316 F.3d at 336 (denying qualified immunity because "the jury could also

find, if it believed [plaintiff's] testimony that he never had drugs on him that night, that no

reasonable officer in [defendant's] position would have believed it was lawful to arrest [plaintiff] for drug possession"); Milfort, 922 F. Supp. 2d at 407 (denying summary judgment based on qualified immunity where, under plaintiff's account, "his arrest was entirely unprovoked").

### III.    Section 1983 Malicious Prosecution Claim

Plaintiff also asserts a § 1983 claim for malicious prosecution. Under New York state law, a claim for malicious prosecution has four elements: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003) (quoting Colon v. City of N.Y., 455 N.E.2d 1248, 1250 (N.Y. 1983)). To establish a malicious prosecution claim under § 1983, a plaintiff must establish these four elements under state law and must also show "some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995).

At the outset, I note that plaintiff can only assert a malicious prosecution claim against Grieco, the arresting officer who signed the criminal complaint. The record does not show that Salmon had any role in plaintiff's prosecution or any of the events following his arrest. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Accordingly, Salmon is entitled to dismissal of the § 1983 malicious prosecution claim against him. See Brandon v. City of N.Y., 705 F. Supp. 2d 261, 274-75 (S.D.N.Y. 2010); Allen v. City of N.Y., 480 F. Supp. 2d 689, 713 (S.D.N.Y. 2007).

Regarding plaintiff's malicious prosecution claim against Grieco, there is no dispute that

the second element is satisfied because the proceeding terminated in plaintiff's favor when all of the criminal charges were dismissed. Nor can there be any dispute that plaintiff suffered a post-arraignment deprivation of liberty when he was incarcerated for over a month. I also find that plaintiff has raised a triable issue of fact regarding the first element because there is enough evidence in the record for a reasonable juror to find that Grieco initiated the proceeding. When asserting a malicious prosecution claim against a law enforcement officer, a plaintiff must overcome the "presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." Brome v. City of N.Y., No. 02 Civ. 7184(WHP), 2004 WL 502645, at *5 (S.D.N.Y. Mar. 15, 2004). Courts have frequently found this element of a malicious prosecution claim can be satisfied where, as here, the law enforcement officer filed the criminal complaint. See Cameron v. City of N.Y., 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); Anderson v. City of N.Y., 817 F. Supp. 2d 77, 91 (E.D.N.Y. 2011) (holding that a reasonable juror could find that officer initiated criminal prosecution against plaintiff where he "brought formal charges . . . in an accusatory instrument"); Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) ("[P]laintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints.").

I find, however, that plaintiff's § 1983 malicious prosecution claim against Grieco fails as a matter of law on the third element because plaintiff cannot demonstrate a lack of probable cause for the prosecution. "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003). A grand jury

indictment gives rise to a presumption of probable cause, which can be rebutted by "evidence that the indictment was secured by fraud, perjury, the suppression of evidence or other bad faith police conduct." Id. at 77.

In order to raise a triable issue of fact on the probable cause element, plaintiff cannot simply rely on his testimony denying that he committed the criminal offense for which Grieco arrested and charged him. "Courts have repeatedly determined that a plaintiff's own testimony is insufficient to rebut the presumption of probable cause" arising from a grand jury indictment. Brown, 2013 WL 1338785, at *4. Instead, the Second Circuit follows a "'competing testimony plus' standard to assess whether a plaintiff has sufficiently rebutted the presumption of probable cause." Brandon v. City of N.Y., 705 F. Supp. 2d 261 (S.D.N.Y. 2010) (citing Boyd, 336 F.3d 72). "The 'plus factor' consists of evidence corroborating the plaintiff's story and suggesting misconduct in the procurement of the indictment." Maldonado v. City of N.Y., No. 11 Civ. 3514(RA), 2014 WL 787814, at *8 (S.D.N.Y. Feb. 26, 2014).

Plaintiff attempts to demonstrate misconduct by asserting that Grieco gave untruthful testimony before the grand jury, but plaintiff cannot use this argument to support his § 1983 claim. In the recent case Rehberg v. Paulk, 132 S. Ct. 1497 (2012), the Supreme Court held that grand jury witnesses are entitled to absolute immunity for § 1983 claims based on their testimony. The Court stated that "this rule may not be circumvented by . . . using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." Id. at 1506. Following Rehberg, district courts in this Circuit have held that plaintiffs cannot use an officer's allegedly false grand jury testimony to rebut the presumption of probable cause arising from the indictment. See Peterson v. Regina, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) ("Even if [plaintiff] had been able to marshal evidence sufficient to show that

[the defendant officer] lied in the grand jury, he would still fail to make out a claim for malicious prosecution because police officers are entitled to absolute immunity for their testimony before the grand jury."); Cooper v. City of N.Y., No. 12 Civ. 8008(SAS), 2013 WL 5493011, at *4 (S.D.N.Y. Oct. 2, 2013); Brown, 2013 WL 1338785, at *4 n.3; Matthews v. City of N.Y., 889 F. Supp. 2d 418, 439 (E.D.N.Y. 2012). Therefore, in assessing whether plaintiff has rebutted the presumption of probable cause, this court cannot consider any of plaintiff's arguments that Grieco's grand jury testimony conflicted with other evidence in the record.

The Supreme Court's decision in Rehberg does not foreclose a § 1983 malicious prosecution claim based on "allegations of bad faith conduct outside the grand jury." Nickey v. City of N.Y., No. 11-CV-3207 (RRM)(RLM), 2013 WL 5447510, at *7 (E.D.N.Y. Sept. 27, 2013). I find, however, that none of plaintiff's allegations of bad faith conduct outside of Grieco's grand jury testimony are sufficient to rebut the presumption of probable cause created by the indictment.

First, plaintiff argues that Grieco withheld exculpatory evidence from the prosecutor and the grand jury. Plaintiff points to two pieces of evidence: a 911 call regarding the shooting in the park, in which the description of the shooter's clothing did not match plaintiff's clothing, and the purported eyewitness at the scene who did not identify plaintiff as the shooter.[3] Pl.'s Mem. of Law in Opp'n to Summ. J. Mot. ("Opp'n"), Dkt. #43, at 4, 9. I find, however, that these two pieces of evidence are not as clearly exculpatory as plaintiff alleges. Grieco and Salmon both testified that they were responding to a report of multiple people shooting at each other in a park. The fact that a description of one particular individual did not match plaintiff, or the fact that an

---

[3] I note that the record reflects some dispute about the statement of the purported eyewitness. Salmon testified that the individual at first identified plaintiff as the shooter, then recanted and said he was unsure. Salmon Dep. at 20. In his affidavit, plaintiff asserts that the purported eyewitness told officers that plaintiff was not the individual he had seen shooting at the park. Pl. Aff. ¶ 9. For the purposes of this summary judgment motion, the court will view the facts in the light most favorable to plaintiff and assume that the eyewitness did not identify plaintiff as the shooter.

eyewitness did not identify plaintiff, would not necessarily rule out plaintiff's involvement in the shooting. See Dawson v. Snow, 356 F. App'x 526, 529 (2d Cir. 2009) (rejecting plaintiff's argument that investigator withheld exculpatory evidence because "the fact that the license plate search produced no matches simply suggested that the number was incorrect; it did not suggest a different perpetrator"); Williams v. City of N.Y., No. 02 Civ. 3693(CBM), 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003) (dismissing claim based on withholding of exculpatory evidence where "the information here does not negate the possibility" that plaintiff had committed the crime). Law enforcement authorities are "under no duty to present every item of arguably exculpatory evidence in seeking an indictment." Savino, 331 F.3d at 75. Furthermore, plaintiff has not pointed to any evidence that Grieco intentionally failed to share this potentially exculpatory evidence with the prosecutor, and in fact concedes that "we cannot tell" whether Grieco conveyed this information to the prosecutor or not. Opp'n 11. Plaintiff's allegations regarding the withholding of evidence do not establish that Grieco acted in bad faith.

Second, plaintiff asserts that Grieco prolonged his prosecution by delaying the DNA testing of the firearm. The record shows that NYPD officers submitted a request for DNA testing on May 21, 2011, the same date as plaintiff's arrest. Eze Decl., Ex. 11, at ECF 1. On June 8, 2011, plaintiff's criminal defense attorney sent a letter requesting DNA testing of the gun. Eze Decl., Ex. 6. Yet the DNA testing was not completed until November 14, 2011, and the charges against plaintiff were not dismissed until January 18, 2012. Plaintiff argues that Grieco "caused most of the delay in performing the DNA testing on the weapon." Opp'n 5. In support, plaintiff points to a line on the NYPD form requesting the DNA testing that states that Grieco "refused to provide a buccal elimination swab for comparison." Eze Decl., Ex. 11, at ECF 1. It is unclear what this statement means, and Grieco testified in his deposition that he could not explain why a

swab was not provided. Grieco Dep. 27-28. Grieco testified that, to his knowledge, it was not his responsibility to take a DNA sample from plaintiff. Id. at 28-29. Based on this ambiguous statement on the form, without more, there is no basis to conclude that Grieco was personally responsible for any delay in the DNA testing of the firearm.

Finally, plaintiff points to a number of purported inconsistencies in the record that do not implicate Grieco's grand jury testimony. Plaintiff argues that Grieco provided false information on the criminal complaint when he stated that he recovered a loaded firearm, because both Salmon and Grieco testified in their depositions that it was Salmon, not Grieco, who picked up the firearm. Opp'n 10-11.[4] Under the collective knowledge doctrine, "for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, … the knowledge of one is presumed shared by all.'" Savino, 331 F.3d at 74 (quoting Illinois v. Andreas, 463 U.S. 765, 772 n.5 (1983)). Since Grieco could rely on Salmon's knowledge in order to establish probable cause, his statement on the form regarding who recovered the firearm is not material to the complaint and does not establish bad faith conduct. Plaintiff also asserts that Salmon's and Grieco's deposition testimony is inconsistent because they stated that they observed a person make a quick movement to drop an object onto the ground, and yet Salmon testified that he found the firearm under a slab of cement. Opp'n 8-9. I find that the testimony is not so inherently implausible that it necessarily suggests fabrication: it is certainly conceivable that a person could lodge a firearm

---

[4] Plaintiff also argues that Salmon's and Grieco's testimony are in conflict regarding which of them saw plaintiff drop an object. Salmon testified that he told Grieco that he had seen someone put an object down. Salmon Dep. at 10. When Salmon was asked whether he personally saw the person drop the object or whether Grieco saw it, Salmon responded, "I did." Id. at 13. Plaintiff argues that Salmon's statements should be construed to mean that only Salmon saw plaintiff drop the object and that Grieco did not personally see it. Opp'n 3-4. Contrary to plaintiff's reading, I do not find that Salmon's testimony necessarily asserts that he was the only one who witnessed the person drop the object. Salmon could only testify as to what he observed, not to what Grieco did or did not observe. Therefore, I do not find that Salmon's testimony conflicts with Grieco's deposition testimony that he personally observed plaintiff drop an object or Grieco's statement to that effect on the criminal complaint.

under a slab of cement in one motion. Plaintiff also argues that Grieco's account of the arrest in his memo book does not mention that he observed a person drop an object or that he recovered a loaded gun. Opp'n 4. I note that the memo book entry does in fact reference a report of shots fired, a stop of five males, and the notation "took photos perp/gun." Eze Decl., Ex. 8. Regardless, the absence of certain details in a memo book does not give rise to so strong an inference of fabrication as to satisfy the requirement of demonstrating bad faith conduct.

Viewing the record as a whole, plaintiff has failed to point to evidence outside of Grieco's grand jury testimony that is sufficient to rebut the presumption of probable cause created by his indictment. Plaintiff's account of events conflicts with the officers' account, but courts in this Circuit require more than "a simple conflict of stories or mistaken memories" on a malicious prosecution claim following an indictment. Brandon, 705 F. Supp. 2d at 274. This case is readily distinguishable from other cases allowing malicious prosecution claims to go forward based on evidence corroborating the plaintiff's account. See McClellan, 439 F.3d at 146 (plaintiff offered evidence, inter alia, that officer lied to the arresting officer about plaintiff's role in the altercation, pressured the DA to bring the case before a second grand jury, and "supervised the investigation despite his obvious conflict of interest"); Boyd, 336 F.3d at 77 (officers' testimony regarding location of arrest conflicted with information on booking sheet); Crews v. Cnty. of Nassau, No. 06-CV-2610 (JFB)(GRB), 2014 WL 558696, at *14 (E.D.N.Y. Feb. 11, 2014) (officer learned plaintiff had been in jail on date of robbery but did not bring this exculpatory evidence to prosecutors); Brandon, 705 F. Supp. 2d at 274 (plaintiff and officer offered competing versions of events leading to plaintiff's arrest, and another officer's account supported plaintiff's version); Brome, 2004 WL 502645, at *3 (officer claimed he saw plaintiff engaging in drug transaction through plexiglass panel, but witnesses testified that lobby had no

plexiglass panel).

Here, plaintiff has not offered any comparable evidence to support his allegations of bad faith conduct. Plaintiff cannot rebut the presumption of probable cause from grand jury indictment by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." Savino, 331 F.3d at 73 (internal quotation marks omitted); see also Simmons v. N.Y.C. Police Dep't, 97 F. App'x 341, 343 (2d Cir. 2004) (finding plaintiff's allegation that police fabricated line-up identification and issued false criminal complaint insufficient where plaintiff "presented no evidence . . . establishing that the indictment was procured through the use of this allegedly tainted evidence"); Maldonado, 2014 WL 787814 at *8 (granting summary judgment where plaintiff failed to identify evidence corroborating his version of events); Brown, 2013 WL 1338785, at *4 (granting summary judgment where "plaintiff has not pointed to any evidence (other than his own testimony) to support his allegation that [officer] lied to prosecutors"); Peterson, 935 F. Supp. 2d at 643 (finding plaintiff did not rebut presumption of probable cause created by grand jury indictment where he "supplied only his suspicions of impropriety").

Since I find that plaintiff cannot rebut the presumption of probable cause created by his grand jury indictment, his § 1983 malicious prosecution claim fails as a matter of law, and defendant Grieco is entitled to summary judgment on this claim.

## IV.    State Law Claims

Plaintiff also asserts New York state law claims against Salmon and Grieco for false arrest and malicious prosecution, as well as state law claims against the City of New York based

on a theory of <u>respondeat</u> <u>superior</u>.[5] Defendants move for summary judgment on all of plaintiff's

state law claims. As explained below, the court finds that plaintiff's state law false arrest claims

must be dismissed, but plaintiff's state law malicious prosecution claims raise issues of law that

have not been sufficiently addressed by the parties. Accordingly, the court reserves judgment on

plaintiff's state law malicious prosecution claims and orders further briefing.

A.      **Notice of Claim**

As a threshold issue, defendants assert that plaintiff's state law claims must be dismissed

because plaintiff failed to comply with New York's statutory notice of claim requirements. Defs.

Mem. 15. A plaintiff bringing a tort claim against the city or its employees must file a notice of

claim within ninety days after the claim arises. N.Y. Gen. Mun. Law § 50-e(1)(a). Failure to

comply with this condition precedent will result in dismissal. <u>See</u> <u>Petway v. City of N.Y.</u>, No.

10-TV-01048 (ARR)(LB), 2012 WL 2254246, at *8 (E.D.N.Y. June 14, 2012); <u>Cantave v.

N.Y.C. Police Officers</u>, No. 09-CV-2226 (CBA)(LB), 2011 WL 1239895, at *12 (E.D.N.Y. Mar.

28, 2011); <u>Maier v. N.Y.C. Police Dep't</u>, No. 08-CV-5104 (ILG)(JO), 2009 WL 2915211, at *3-

*4 (E.D.N.Y. Sept. 1, 2009).

Under New York state law, a false arrest claim accrues when the plaintiff is released from

confinement. <u>Oka v. Cnty. of Suffolk</u>, No. 11-CV-2578 (SJF), 2014 WL 198821, at *4

(E.D.N.Y. Jan. 13, 2014); <u>Wharton v. Cnty. of Nassau</u>, No. 07-CV-2137(RRM)(ETB), 2010 WL

3749077, at *9 & n.9 (E.D.N.Y. Sept. 20, 2010). In this case, plaintiff was released on bail on

---

[5] The court assumes that plaintiff does not assert claims against the City of New York under § 1983. In his
complaint, plaintiff seeks to hold the city liable "under the principal agent/<u>respondeat</u> <u>superior</u> rule." Compl., Dkt.
#14, ¶ 28. It is well settled that a municipal government cannot be liable under § 1983 based on the theory of
<u>respondeat</u> <u>superior</u>. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). To assert a § 1983 municipal liability
claim under <u>Monell</u>, a plaintiff must show that the alleged constitutional violation occurred pursuant to an official
policy or custom. <u>Id.</u> Here, plaintiff has not alleged any official policy or custom, and the record provides no support
for such an assertion. However, a plaintiff can bring a <u>respondeat</u> <u>superior</u> claim against a municipality under New
York state law. <u>Anderson</u>, 817 F. Supp. 2d at 98. Accordingly, the court will construe plaintiff's claim against the
city as arising only under state law.

June 27, 2011. His notice of claim is dated January 23, 2012, more than ninety days later. Swartz Decl., Ex. I. Since plaintiff failed to file a timely notice of claim, his state law false arrest claims against Salmon and Grieco, and his respondeat superior claim against the City of New York based on an underlying false arrest claim, must be dismissed.

Plaintiff's malicious prosecution claim did not accrue until January 18, 2012, the day that the charges against him were dismissed. See Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 739 (S.D.N.Y. 2012); Mejia v. City of N.Y., 119 F. Supp. 2d 232, 256 (E.D.N.Y. 2000). Plaintiff's notice of claim is therefore timely with respect to his malicious prosecution claim. Defendant appears to argue that plaintiff's notice of claim is nevertheless inadequate but does not specify what requirements plaintiff did not follow. Defs. Mem. 15. Accordingly, the court directs the parties to brief whether plaintiff satisfied the statutory notice of claim requirement regarding his state law malicious prosecution claim.

**B.      Malicious Prosecution**

The court also directs the parties to address the merits of plaintiff's state law malicious prosecution claim, in the event that the court finds the notice of claim requirement to be satisfied. A claim for malicious prosecution under § 1983 incorporates the elements of New York state law. Since defendants are entitled to summary judgment on plaintiff's § 1983 malicious prosecution claim, they would typically be entitled to summary judgment on his state law claim as well. This particular case, however, presents a unique set of circumstances. In support of his malicious prosecution claim, plaintiff presented evidence that Grieco's testimony before the grand jury conflicted with both Grieco's and Salmon's deposition testimony. I could not consider this evidence in assessing plaintiff's § 1983 malicious prosecution claim, because the Supreme Court recently held in Rehberg that grand jury witnesses have absolute immunity for claims

arising from their testimony. However, the decision in <u>Rehberg</u> only governs claims under § 1983. The parties have not addressed how the analysis might be different with respect to plaintiff's <u>state</u> <u>law</u> malicious prosecution claim.

It appears that New York law has traditionally allowed plaintiffs to use an officer's grand jury testimony to support a malicious prosecution claim. In its frequently cited formulation of the malicious prosecution standard, the state's highest court held that the presumption of probable cause created by a grand jury indictment can be overcome "by evidence establishing that the <u>police witnesses have not made a complete and full statement of facts either to the Grand Jury</u> or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." <u>Colon</u>, 455 N.E.2d at 1250-51 (emphasis added). Following this standard, plaintiffs have brought New York state malicious prosecution claims based in part on allegations that the defendant testified falsely before the grand jury. <u>See, e.g.</u>, <u>Kirchner v. Cnty. of Niagara</u>, 969 N.Y.S.2d 277, 281 (App. Div. 2013); <u>Campos v. City of N.Y.</u>, 821 N.Y.S.2d 19, 21 (App. Div. 2006).

This court has not found any cases squarely addressing whether the Supreme Court's decision in <u>Rehberg</u> affects New York state law malicious prosecution claims. Following <u>Rehberg</u>, the Second Circuit held that grand jury witnesses are entitled to absolute immunity in claims governed by Connecticut state law, <u>Vidro v. United States</u>, 720 F.3d 148, 151-53 (2d Cir. 2013), but has not had occasion to consider the rule under New York state law. One case in this circuit has suggested that <u>Rehberg</u> does not foreclose the use of grand jury testimony to support a malicious prosecution claim under New York state law. <u>See</u> <u>Maldonado v. City of N.Y.</u>, No. 11 Civ. 3514(PKC)(HBP), 2012 WL 2359836, at *4-*5 (S.D.N.Y. June 21, 2012) ("[T]he grand jury minutes can only be used to advance a malicious prosecution claim under state law."). Since

so few cases have addressed this issue in the two years since <u>Rehberg</u>, the court finds it would be beneficial to give the parties the opportunity to provide further briefing.[6]

## V.    John Doe Defendants

Plaintiff's complaint also names nine John Doe defendants from the 75th Precinct. Defendants move to dismiss all claims against the John Doe defendants. Defs. Mem. 17. "If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice or order that service be made within a specified time," unless "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). Plaintiff filed the second amended complaint on January 24, 2013, and has not yet identified or served the John Doe defendants. In response to defendants' summary judgment motion, plaintiff did not attempt to show "good cause" for the failure to serve the John Doe defendants within the 120-day period. Therefore, all claims against the John Doe defendants are dismissed. <u>See</u> <u>Richardson v. City of N.Y.</u>, No. 11 Civ. 02320(LGS), 2013 WL 6476818, at *11 (S.D.N.Y. Dec. 10, 2013); <u>Spencer v. Ellsworth</u>, No. 09 Civ. 3773(JGK), 2011 WL 1775963, at *4 (S.D.N.Y. May 10, 2011).

---

[6] Defendants also object to the reliance on Grieco's grand jury testimony because the minutes have not been unsealed. Defs. Mem. 11. Yet the cases that defendants cite in support of this argument state that the court can consider sealed grand jury minutes in order to prevent a "miscarriage of justice." <u>Spencer v. Ellsworth</u>, No. 09 Civ. 3773(JGK), 2011 WL 1775963, at *5 (S.D.N.Y. May 10, 2011). In <u>Spencer</u>, the court declined to consider the grand jury minutes because the plaintiff failed to present evidence that the defendants' testimony before the grand jury differed from their trial testimony. <u>Id.</u> Here, to the contrary, plaintiff has presented evidence of discrepancies between Grieco's grand jury and deposition testimony. Plaintiff obtained the grand jury minutes from plaintiff's criminal defense counsel and included them as an exhibit in opposition to the summary judgment motion. Pl.'s Local Rule 56.1 Statement of Disputed Facts, Dkt. #44, ¶ 15. Assuming <u>Rehberg</u> does not pose a bar, the court can exercise its discretion to consider these grand jury minutes. <u>See</u> <u>Bugliaro v. City of N.Y.</u>, No. 10-CV-4881 (FB) (RER), 2013 WL 2399656, at *3 n.7 (E.D.N.Y. May 31, 2013) (declining to strike grand jury minutes that plaintiff "received during his criminal proceedings but did not formally petition to have unsealed"); <u>Frederick v. N.Y. City</u>, No. 11 Civ. 469(JPO), 2012 WL 4947806, at *9 (S.D.N.Y. Oct. 11, 2012) (noting that plaintiffs can use grand jury testimony to support malicious prosecution claims in "cases where plaintiffs have already come into possession of grand jury minutes in the underlying criminal proceeding"). To the extent that defendants argue that plaintiff only offered a portion of Grieco's grand jury testimony, Defs. Reply 3, defendants are free to direct the court's attention to any other portions of the testimony that may be relevant.

## CONCLUSION

For the reasons set forth above, the court grants the defendants' motion for summary judgment in part, denies the motion in part, and reserves judgment in part. Plaintiff's § 1983 false arrest claim against defendant officers Grieco and Salmon is permitted to go forward. Plaintiff's § 1983 malicious prosecution claim against Grieco and Salmon is dismissed. Plaintiff's state law false arrest claims against Grieco, Salmon, and the City of New York are dismissed. All of the John Doe defendants are dismissed from this action.

The court reserves judgment and orders further briefing on plaintiff's state law malicious prosecution claim. The parties should address: (1) whether plaintiff complied with the statutory notice of claim requirement; and (2) whether, following Rehberg, the court can consider Grieco's grand jury testimony in assessing whether plaintiff has rebutted the presumption of probable cause arising from his indictment. The court directs defendants to file a brief by June 13, 2014, and plaintiff to file a response by June 20, 2014.

SO ORDERED.

___/s/_____
Allyne R. Ross
United States District Judge


Dated:      May 30, 2014
           Brooklyn, New York